IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RYAN G. S.,[1]
    Plaintiff,

v.                                          Civil No. 3:20-cv-00047 (MHL)

KILOLO KIJAKAZI,[2]
    Defendant.

## **REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying the application of Ryan G. S. ("Plaintiff") for disability insurance benefits under the Social Security Act (the "Act"). Plaintiff, thirty-seven years old at the time of his benefits application, graduated from high school, completed some college courses, and previously worked in various sales, retail, labor, and managerial positions. (R. at 41, 61, 101.) Plaintiff asserts that he is disabled because he suffers from Crohn's disease, diabetes mellitus, degenerative disc disease, hypertension, osteoporosis, arthritis, hypogonadism, depression, and anxiety. (R. at 17-18, 101-102.) Of these, the Administrative Law Judge ("ALJ") found that Plaintiff's complications from Crohn's disease (inflammatory bowel disease) and diabetes mellitus were severe impairments. (R. at 17.)

On July 6, 2017, Plaintiff applied for disability insurance benefits and supplemental security income. (R. at 15.) After Plaintiff's application was denied, and after exhausting his

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. Pursuant to Federal Rules of Civil Procedure Rule 25(d), Acting Commissioner Kijakazi should be substituted as the defendant in this suit.

1

administrative remedies, Plaintiff now seeks judicial review of the ALJ's decision, dated February 14, 2019, pursuant to 42 U.S.C. § 405(g).

This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for summary judgment, rendering the matter ripe for review.[3] Plaintiff raises one argument, asserting that the ALJ failed to provide sufficient reasons supported by substantial evidence for according less than controlling weight to the opinion of one of Plaintiff's treating physicians, Dr. Ramy Eid ("Dr. Eid") (Pl.'s Mem. In Supp. of Mot. For Summ. J. at 1-2, ECF No. 22 ("Pl.'s Mem.").) For the reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 21) be GRANTED, Defendant's Motion for Summary Judgment (ECF No. 23) be DENIED, and the final decision of the Commissioner be VACATED and REMANDED.

## I. PROCEDURAL HISTORY

On July 6, 2017, Plaintiff filed an application for disability insurance benefits, with an alleged onset of November 2, 2016. (R. at 15.) Plaintiff's claim was denied on September 20, 2017, and again upon reconsideration on January 24, 2018. (R. at 15.) At Plaintiff's request, the ALJ held a hearing on December 12, 2018 (the "Hearing") during which testimony was offered from Plaintiff and a vocational expert. (R. at 15.) On February 14, 2019, the ALJ issued a written opinion denying Plaintiff's disability claim. (R. at 35.) The ALJ concluded that Plaintiff did not qualify as disabled because Plaintiff could adjust successfully to other work that exists in significant numbers

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

in the national economy. (R. at 24.) The Social Security Administration Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision, rendering the ALJ's decision as the final decision of the Commission subject to review by this Court. (R. at 1.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

This Court upholds an ALJ's Social Security disability determination if: (1) the ALJ applied the correct legal standards; and (2) substantial evidence supports the ALJ's factual findings. *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020) (citing 42 U.S.C. § 405(g) and *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Pearson*, 810 F.3d at 207 (internal quotation marks omitted). Substantial evidence thus requires more than a scintilla of evidence, but less than a preponderance of the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Between these two evidentiary thresholds lies a "zone of choice" where the ALJ's decision can go either way without interference by the courts. *See Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272–73 (8th Cir. 1988)). "'In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment' for the ALJ's." *Arakas*, 983 F.3d at 95 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).

A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. *See Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984). The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. *See Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989). If the reviewing court has no way of evaluating the basis for the ALJ's

3

decision, then "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S. Ct. 1598, 84 L. Ed. 2d 643 (1985).

### III. FACTUAL BACKGROUND

In rendering the decision to deny Plaintiff's disability claim, the ALJ considered Plaintiff's background, medical evidence, and testimony.

#### A. Plaintiff's Background.

Plaintiff, who was thirty-seven years old at the time of his benefits application, previously worked in various operating, managerial, sales, retail, and labor positions. (R. at 60-62.) He maintained substantial gainful employment for the past fifteen years. (R. at 23.) During that time, Plaintiff worked as a fry cook for a catering company, an electrician assistant at an electrical company, a printing press associate at a printing company, a sales associate at a vitamin store, a barista at two different coffee shops, a donation attendant at a thrift store, a night stocker at a grocery store, and a cashier at a fast food restaurant. (R. at 42-47, 259.) Plaintiff maintained employment until the symptoms from his Crohn's disease (*e.g.*, pain, fatigue, nausea) worsened, which required him to go to the restroom between six and twelve times per day. (R. at 48.)

#### B. Medical Evidence.

Plaintiff has a history of gastrointestinal medical ailments tracing back to as early as three years old, when he was treated by a gastro pediatrician, due to bleeding from the rectum. (R. at 287.) Plaintiff's pain limited his activities for the past twenty years, during which he underwent a complete colectomy in 2000 and a laparoscopic adhesion surgery in 2007. (R. at 282, 287, 516.) His pain became notably more severe in the four years leading up to his social security disability application. (R. at 282.)

4

During the previous four years, Plaintiff sought treatment at various emergency care facilities for complications relating to pain, diarrhea, nausea, malaise, and acute renal failure. On May 17, 2015, Plaintiff treated at CJW Medical Center-Johnston Willis Hospital ("CJW") for cervical muscular strain, radiculopathy, and muscle spasms. (R. at 335-36.) Plaintiff returned to CJW again on: (1) August 30, 2015, with complaints of abdominal pain, diarrhea, and nausea with vomiting; and (2) July 12, 2016 with complaints of generalized abdominal pain, nausea with vomiting, and malaise. (R. at 337, 360.) On September 22, 2016, Plaintiff went to the St. Francis Medical Center emergency department ("St. Francis") complaining of five days of diarrhea and three days of lower quadrant abdominal pain. (R. at 380.) At that time, Plaintiff reported that he lost fifteen pounds in one week due to his job as a night stocker at Kroger and the continual diarrhea. (R. at 380.) The medical staff noted Plaintiff was: (1) dehydrated; and (2) experiencing acute renal failure. (R. at 384, 388, 390.) Plaintiff returned to St. Francis on February 12, 2017, with complaints of abdominal pain and confusion. (R. at 414.)[4] On examination, Plaintiff had abdominal tenderness and mild left lower abdominal pain. (R. at 416.)

Plaintiff returned to CJW on March 3, 2017, reporting left lower quadrant pain, and he underwent x-rays of his abdominal and pelvic regions. (R. at 439.) He returned again on April 11, 2017 and reported abdominal pain. (R. at 449.) Plaintiff told doctors that he noticed hematuria and dysuria about a week after his last gastrointestinal visit and was currently taking Ciproflaxin to treat urinary tract and kidney infections, to no avail. (R. at 449.) On May 9, 2017, Plaintiff visited St. Francis for flank pain and hematuria complaints, with onset over the past six weeks. (R. at 470.)

---

[4] Plaintiff does not contend that his head injury is attributable or related to his application for social security. Plaintiff reported falling and hitting his head two weeks prior, in which he briefly lost consciousness and experienced subsequent confusion. (R. at 414, 418). A head CT on February 12, 2017, showed no acute infarct or abnormalities. (R. at 423.)

5

He returned a few days later on May 14, 2017, complaining of pelvic pain, hip pain, and blood in his urine. (R. at 480.) An abdominal/pelvic CT scan showed bilateral renal cysts and left-sided renal scarring, but no acute abdominal or pelvic pathology. (R. at 485.)

Plaintiff was also treated by Nurse Practitioner Renee G. Hammel ("Nurse Hammel"), who wrote two letters regarding Plaintiff's ability to work with his medical condition. On February 10, 2016, Nurse Hammel wrote that the frequent flare ups of pain and gastrointestinal symptoms caused Plaintiff to miss work and appointments. (R. at 289.) On April 24, 2017, Nurse Hammel wrote that Plaintiff's symptoms would flare up rendering him unable to leave the home, and these flare ups impeded Plaintiff's ability to find and keep a job. (R. at 288.)

In addition to his physical impairments, Plaintiff also suffers from depression due to the pain from Crohn's disease and the subsequent pressure to maintain employment. (R. at 49-50.)

### C. Plaintiff's Testimony.

At the Hearing, Plaintiff testified that his symptoms from Crohn's Disease worsened in the prior four years, resulting in increased abdominal pain, fatigue, nausea, and frequent bowel movements. (R. at 48, 282.) Plaintiff stated that he would need to go to the restroom on a daily average of "six, seven times a day," and on "[b]ad days [Plaintiff] can go up to 12 times a day . . . ." (R. at 48.) He stated that this resulted in more cervical and spinal pain. (R. at 48.) In addition, he experienced episodes of chronic, sharp abdominal pain for "10 to 15 minutes, sometimes up to an hour and when those come on it's very debilitating and it's hard to focus, concentrate . . . ." (R. at 48.) Plaintiff testified that he had to ask to leave work and go home due to the pain and discomfort three to four times a month, or he would go to work with fevers "that would come on and go . . . ." (R. at 49, 52.) Despite various therapies, including infusions and steroids, Plaintiff found that "nothing has seemed to gone [sic] into a remission where I've been able to hold down

a job long enough to really have a quality of like [sic] . . . ." (R. at 49.) He further explained that he had to miss work three or four days a month because he would wake up "in a flare with running to the restroom, cramping, pain[.] [Plaintiff] would try to take the medication to try to settle things down and it just wouldn't work and [Plaintiff] would have to call in and try to either find someone to reschedule or just call off . . .completely." (R. at 51.) He testified that he would arrive to work late by thirty minutes to an hour for five days a month in an effort to "get things under control before a scheduled shift." (R. at 51.) Plaintiff reported he lost "at least" sixteen jobs as a result of his symptoms, ten of which occurred before the 90-day probationary period ended. (R. at 50.) He testified that he is confined to his room and restroom for twenty days out of any given month. (R. at 56.)

### D. Vocational Expert's Testimony.

After hearing testimony from Plaintiff, the ALJ examined a vocational expert. (R. at 59-65.) The vocational expert read and listened to Plaintiff's testimony regarding his work history. (R. at 60.) The vocational expert discussed Plaintiff's previous employment and the exertional levels of some of the positions. (R. at 61.) The ALJ then questioned the vocational expert regarding hypothetical situations of a person with the same age, education, and limited exertion and duration of continuous work levels. (R. at 62.) The vocational expert discussed available jobs in the national economy for a hypothetical worker with these limitations. (R. at 62-63.)

### IV. THE ALJ'S DECISION

Following the Hearing, the ALJ issued a written opinion on February 14, 2019, concluding that Plaintiff did not qualify as disabled and denying him benefits. (R. at 16-35.) The ALJ followed the five-step evaluation process established by the Act to determine whether a disability exists. (R.

18-35.); 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the five-step sequential evaluation).

According to those regulations, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the claimant's medical impairments meet or equal an impairment in the Listings.[5] § 404.1520(a)(4)(iii); *see* 20 C.F.R Pt. 404, Subpt. P, App. 1. Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most that the claimant can do despite his physical and mental limitations. §§ 404.1520(e), 404.1545(a)(1). At step four, the ALJ assesses whether the claimant can perform his past work given his residual functional capacity. § 404.1520(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. § 404.1520(a)(4)(v).

In the instant case, at step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since November 2, 2016, which is the alleged onset date of his impairments. (R. at 17.)

At step two, the ALJ concluded that Plaintiff has the following severe impairments: (1) inflammatory bowel disease also diagnosed as Crohn's Disease; and (2) diabetes mellitus. (R. at 17.) The ALJ found that these severe impairments significantly limit Plaintiff's ability to perform basic work activities. (R. at 17.)

---

[5] The Listings are a regulatory appendix of "the major body systems impairments that [the Social Security Administration] consider[s] to be severe enough to prevent an individual from doing any gainful activity." § 404.1525 (a).

At step three, the ALJ determined that none of Plaintiff's impairments, individually or in combination, met or equaled a disability listing set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19.) Specifically, the ALJ held that Plaintiff's impairments did not meet or equal Listing 5.06 (properly documented inflammatory bowel disease). (R at 19.) In concluding Plaintiff's impairments did not meet any disability listing, the ALJ explained that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except in addition to normal breaks, [Plaintiff] would need to be off-task 5% of the time in an eight-hour workday." (R. at 19.)

At step four, the ALJ concluded that Plaintiff is able to perform past relevant work as a salesclerk, performed at the light exertional level, and assistant manager/management trainee, performed at the light exertional level. (R. at 23.)

At step five, the ALJ held that there were jobs that existed in significant numbers in the national economy for Plaintiff to perform based on his residual functional capacity, age, education, and work experience. (R. at 24.) The ALJ agreed with the vocational expert's testimony that Plaintiff could work in representative occupations such as cashier, cafeteria attendant, and mail clerk. (R. at 24.) The ALJ therefore concluded Plaintiff was not disabled under the Act. (R. at 25.)

## V. ANALYSIS

In his appeal to this Court, Plaintiff argues that the ALJ erred by not giving more weight to Dr. Eid's medical opinion than to the state agency medical consultants, and by failing to address the weight given to Nurse Hammel's letters. (Pl.'s Mem. at 7, 9 n.2, 11). Defendant counters that substantial evidence supports the ALJ's supportability and consistency evaluations of Dr. Eid's and Nurse Hammel's opinions. (Def.'s Mot. For Summ. J. and Br. In Supp. Thereof at 17, 19-20,

ECF No. 23 ("Def.'s Mem.").) For the reasons set forth below, the Court finds that the ALJ erred in her evaluation of Dr. Eid's and Nurse Hammel's opinions.

Under the Social Security Administration regulations, the ALJ must consider each medical opinion in the record. 20 C.F.R. §§ 404.1520c, 416.920c ("We will articulate in our determination or decision how persuasive we find all of the medical opinions . . . in your case record."). The regulations define a medical opinion as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the [following] abilities . . .
>
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

*Id*. §§ 404.1513(a)(2), 416.913(a)(2). A medical opinion does not include "judgments about the nature and severity of [the claimant's] impairments, . . . medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id*. § 404.1513(a)(3) (defining these categories of information as "other medical evidence").

Under the regulations,[6] the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements. *Id*. §§ 404.1520c, 416.920c(a), (b), (c)(1)– (5). Supportability and consistency are the "most important" factors, and the ALJ must discuss how they considered these factors in the written opinion. *Id*. § 416.920c(b)(2).

For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are," the "more persuasive the medical opinion []" will be. *Id*. § 416.920c(c)(2). Similarly, for consistency, "[t]he more consistent a medical opinion []" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion []" will be. *Id*. § 416.920c(c)(2).

The ALJ may explain her consideration of the other factors but is only required to do so when contrary medical opinions are equally persuasive in terms of both supportability and consistency. See id. § 416.920c(b)(3). In that situation, the ALJ must then articulate the remaining factors and their application to the persuasiveness of the medical opinion. *See id.*

### A. The ALJ Erred in Evaluating Dr. Eid's Opinion.

Plaintiff argues that the ALJ erred in evaluating Dr. Eid's opinion as only partially persuasive because Dr. Eid did not consider additional physical limitations. (Pl.'s Mem. at 7.) Plaintiff contends that the ALJ improperly reached this conclusion without explaining how Dr.

---

[6] Because Plaintiff filed his disability claim after March 27, 2017, Section 416.920c, which sets forth revised rules regarding the assessment of medical opinion evidence, applies here.

Eid's failure to account for additional limitations impacted her residual functional capacity holding. *See id.*

Prior to evaluating the opinion evidence, the ALJ reviewed the testimony of Plaintiff, including: (1) Plaintiff's reported daily activities; and (2) medical evidence, including records of Plaintiff's visits with various medical providers.

Plaintiff treated with Dr. Eid since the mid-2000s on an "on-needed basis" for his Crohn's disease. (R. at 53.) During the relevant period, Plaintiff treated with Dr. Eid in February, March, May, and July 2017 for complaints of Crohn's disease symptom recurrence. (R. at 511, 515, 519, 523.) Plaintiff reported abdominal pain and frequent bowel movements with occasional diarrhea. (R. at 511, 515, 519, 523.) He also reported chronic fatigue, poor appetite, and changes in his weight. (R. at 517.) In November 2018, Dr. Eid concluded that Plaintiff's Crohn's disease symptoms frequently interfered with his attention and concentration, required him to have ready access to a restroom and unscheduled restroom breaks during the workday, and produced three "bad days" a month. (R. at 22.)

The ALJ determined that Dr. Eid's statement was "partially persuasive" because it was only "somewhat consistent with and supported by the record," and "failed to account for additional limitations to light work due to the claimant's symptoms, which are exacerbated by physical activity." (R. at 22.) Plaintiff contends the ALJ erred in her consideration of Dr. Eid's opinion as only "partially persuasive," because any accounting by Dr. Eid for additional limitations to light work would not change Dr. Eid's opinion that Plaintiff is disabled. ((R. at 22.); *see* Pl.'s Mem. at 7, 10-11).

This Court finds that the ALJ erred when she determined that Dr. Eid's opinion is "partially persuasive." (R. at 22.) The ALJ's evaluation of Dr. Eid's opinion fails to explain how the ALJ

12

concluded that Dr. Eid's opinion was "somewhat consistent with and supported by the record," without explaining what parts of the record Dr. Eid's opinion was inconsistent with or unsupported by. (R. at 22.) Although the ALJ generally cited fourteen exhibits – nearly 400 pages – to support her conclusion, the ALJ did not describe the contents of those exhibits, nor identify anything specific about them that contradicted the record. Such citation falls short of explaining adequately how Dr. Eid's opinion is inconsistent with and unsupported by the record.

This is particularly true where many pages of the cited exhibits support Dr. Eid's conclusions. (*See e.g.*, R. at 337 ("abdominal pain, diarrhea, nausea with vomiting"); 360 (generalized abdominal pain, nausea with vomiting, malaise); 380 (five days of diarrhea and three days of lower quadrant abdominal pain); 384, 388, 390 (dehydration and acute renal failure); 439 (left lower quadrant pain); 449 (abdominal pain); 470 (flank pain and hematuria complaints); 480 (pelvic pain, hip pain, blood in urine); 485 (bilateral renal cysts and left-sided renal scarring); 517 ("chronic fatigue, poor appetite, weight gain and weight loss".)) The ALJ did not explain how these citations in support of Dr. Eid's opinion factored into the weight given to his statement.

Thus, the ALJ's general citation to these exhibits, without more, does not allow the Court to meaningfully review the ALJ's conclusion that Dr. Eid's opinion was only partially persuasive. *See Monroe v. Colvin*, 826 F.3d 176, 191 (4th Cir. 2016) (holding that the ALJ failed to specify what objective evidence or what aspects of the treatment history he was referring to which rendered the ALJ's analysis incomplete and precluded a meaningful review). The ALJ's evaluation of Dr. Eid's opinion fails to build "an accurate and logical bridge from the evidence to her conclusion." *Id.* at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). Accordingly, the ALJ erred in evaluating Dr. Eid's opinion.

**B. The ALJ Erred by Failing to Articulate the Persuasiveness of Nurse Hammel's Opinion.**

Plaintiff argues that the ALJ failed to articulate the persuasiveness of Nurse Hammel's opinion. (R. at 330.) In response, Defendant contends that Nurse Hammel's opinion in the two letters supporting Dr. Eid's opinions is inconsistent with Nurse Hammel's consistent findings that the Plaintiff was not in distress. (Def.'s Mem. at 17, *citing* R. at 541, 546, 550, 558, 567, 636.)

The record demonstrates that Nurse Hammel treated Plaintiff for his Crohn's disease symptoms once a month "beginning in 2014 after having no health care coverage for quite some years." (R. at 53.) Nurse Hammel wrote two letters addressing Plaintiff's Crohn's disease and its impact on his employment. (R. at 288-89.) In the first letter, dated February 10, 2016, Nurse Hammel wrote that Plaintiff has "frequent flare ups of abdominal pain and gastrointestinal symptoms. He often misses workdays and appointments due to flare ups." (R. at 289.) In the second letter, dated April 24, 2017, Nurse Hammel stated that Plaintiff has "frequent flare ups of abdominal pain and gastrointestinal symptoms. [Plaintiff] is often unable to leave his house due to these symptoms. This has impeded his ability to keep jobs in the past and continues to make it difficult for him to get a job at this time." (R. at 288.)

The ALJ referenced Nurse Hammel's opinion in the record, stating that "[i]n letters dated February 10, 2016, and April 27, 2017, the claimant's treatment provider, R. Hammel, NP, wrote that the claimant had difficulty maintaining employment due to frequent flare ups of abdominal pain and gastrointestinal symptoms." (R. at 22.) (internal citation omitted). Upon review of Nurse Hammel's letter, Nurse Hammel did not provide a medical opinion regarding plaintiff's mental limitations but did provide a medical opinion regarding Plaintiff's physical limitations. (R. at 288-89.) Nurse Hammel's statements that Plaintiff's Crohn's disease symptoms precluded him from leaving his house and impeded him from maintaining and/or obtaining employment constitute an

14

opinion on Plaintiff's "ability to perform physical demands of work activities, such as sitting, standing, [and] walking[.]" §§ 404.1513(a)(2)(i), 416.913(a)(2)(i). As a result, it was incumbent upon the ALJ to articulate a conclusion when evaluating the persuasiveness of Nurse Hammel's opinion. (*See* §§ 404.1520c(b)(1)-(2) (requiring the ALJ to explain the supportability and consistency of medical opinions in the record), 416.930c(b)(1)-(2)).

Because Nurse Hammel's February 2016 and April 2017 letters constituted a medical opinion regarding Plaintiff's impairment-related limitations, the ALJ was required to articulate its persuasiveness by considering its supportability and consistency with the other evidence in the record, as well as Nurse Hammel's treatment relationship, her specialization, and any other factors to support or contradict her opinion. *See* 20 U.S.C. §§ 404.1520c(b), (c)(2)-(5), 416.920c(b), (c)(2)-(5). While the ALJ mentioned Nurse Hammel's letters and their substance, she failed to articulate the persuasiveness of Nurse Hammel's opinion. (R. at 22.) Thus, the ALJ erred by failing to articulate the persuasiveness of Nurse Hammel's opinion.

## VI. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 21) be GRANTED, Defendant's Motion for Summary Judgment (ECF No. 23) be DENIED, and the final decision of the Commissioner be VACATED and REMANDED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge Lauck and to all counsel of record.

N**OTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

         /s/ MRC
Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: <u>August 9, 2021</u>